Milligan, J.,
delivered the opinion of the Court.
This is a bill filed in the Chancery Court at Nashville, to set aside a former decree of that Court, and to declare certain sales, made pursuant thereto, null and void, and to restore the parties to their original rights. It is difficult accurately to define the technical character of the bill. Strictly, it is not a bill of review, nor is it, in its frame and allegations, technically, a bill to impeach a decree obtained by fraud or imposition. As a bill of review, it does not seek relief, alone on account of errors apparent in the decree, or upon new matter arising in time; and as an *514 original bill to impeach a decree gained by fraud or imposition, it fails to charge with fraud and imposition. Its character is compounded, partaking both of the nature of a bill of review, and an original bill to set aside a former decree improperly obtained, but without fraud, collusion or surprise, against an infant; and as such, it may, perhaps, be maintainable, under such facts as impeach the validity of the former decree, or otherwise render it void: Story Eq. Pl., sec. 427; 1 Danl. Ch. Pr., 206.
The bill charges that the complainant, Hugh E. McGavock, who sues by his next friend, John Bowman, is a minor, and only son and heir-at-law, of Hugh McGavock, deceased, who died intestate in 1853, leaving his widow, Mary McGavock, and complainant, the only persons surviving him, who are interested in the settlement and distribution of the estate, after the payment of debts.
Francis McGavock administered on the estate, and, in the same year, 1853, Jacob McGavock, Francis Mc-Gavock, administrators, etc., the widow, Mary McGa-vock, and complainant, then an infant of only nine years, by his uncle and next friend, Francis McGavock, filed their bill in the Chancery Court of Davidson County, alleging, among other things, the death and intestacy of Hugh McGavock; the qualification of his administrator; the sale of his personal property, as well as the sale of several negroes, under a deed of trust, executed by the intestate in his life time, and stating the indebtedness of the estate at $25,000.
*515 It further appears that the intestate, in his life time, on the 10th of January, 1853, conveyed in trust, to Jacob McG-avock, one of the complainants, two tracts of land, near the City of Nashville, one containing 200 acres, and the other 103 acres, to secure various debts, amounting, with interest, to over $15,000. By the terms of the deed, the trustee was empowered to sell the lands conveyed, either at public or private sale, for cash or on a credit, at such. time as the exigencies of the trust might require.
Prior to this time, on the 23d of May, 1844, it appears that the intestate, Hugh McGavock, had conveyed the same lands in trust to John M. Lea, to secure the payment of a note of $3,500, held by him as executor, and due and payable March 1, 1846, with power in the trustee to sell for cash, at any time after the maturity of the note.
The lands, as charged in the bill, if sold under the trusts, would have been sold subject to redemption; and as it is assumed in the bill, in the embarrassed condition of the estate, it would be manifestly to the interest of the parties, and especially to the infant complainant, to have them sold free from the equity of redemption, in a particular order. At the November Term, in 1853, an interlocutory order was pronounced by the Chancellor, directing the Master to hear proof, and report the indebtedness of the estate, the amount of personal assets, and whether it would be necessary to resort to the real estate to pay debts; and, especially, whether it was manifestly to the interest of the minor *516 complainant that the lands he sold in the order indicated in the bill, without the equity of - redemption. In obedience to this decree the Master heard proof, and reported to the same Term of the Court at which the decree was pronounced, showing the indebtedness of the estate, the personal assets, and the necessity of resorting to the real estate to pay debts; and that it would be manifestly to the interest of the minor that the lands be sold without the equity of redemption, and in the order indicated in the bill. That is to say : “ The 103 acre tract first, and then so much of the home tract as lies farthest from Nashville, so as not to reduce it below 75 acres; and lastly, so much of the small tract, nearest the city, which is laid off into lots, as may be necessary,” etc.
This report was confirmed, and Jacob McG-avock, the Trustee, as commissioner, directed to sell the lands, in the order specified in the Master’s report. After-wards, at the May Term, 1854, Francis McGavock, with the assent of all the parties, was substituted as commissioner, in the place of Jacob McGavock, who proceeded to sell a portion of the lands; but, as it is alleged, not in the order specified in the decree. He returned a report of the sale, accompanied by a plot of the lands sold; • from which it appears, as stated in the bill, that only 30 acres of the 103 tract, and about 84 acres of the home tract, were sold.
At the June Term, 1864, the commissioner’s report of sale, without exceptions, was confirmed, and a decree pronounced directing the commissioner to make titles to *517 the purchasers. Deeds were accordingly executed, and the several purchasers admitted to the possession of the lands respectively bought by each.
All the purchasers are made parties defendants, and claim ‘title to the land as bona fide purchasers, under the decree of the Chancellor, and the commissioner’s deed made pursuant thereto.
The hill substantially alleging the foregoing facts, was demurred to; and the demurrer sustained, and the bill dismissed; from which an appeal in error is prosecuted to this Court.
Treating the bill in the most favorable light in which it can be viewed, as an original bill to impeach a decree improperly obtained against an infant, and charging his estate; we are called upon to determine how far it will protect bona fide purchasers under the former decree. Eor, view it as we may, it is not a mere reversal of the decree that is sought, but that the sales under it may be set aside, and the ' parties reinstated to their original rights.
The law is well settled that an original bill will lie in favor of an infant to impeach a decree obtained by fraud and imposition; for these will infect judgments at law, and decrees of all Courts; but they annul the whole in the consideration of courts of equity : Story’s Equity Pleadings, sec. 426. So also, it is said, a bill may be maintained for error to impeach a decree where it is not gained by fraud, collusion, or surprise, and the infant is not obliged, for that purpose, to wait until he has attained his majority: Story’s Eq. Pl., sec. 427; 1 Danl. Ch. Pr., 206. The errors for which such a bill *518 will lie, appear to be somewhat limited in the books, and tend to show that some error, in fact, or law has been committed against the infant, to his prejudice — some injustice done him ; some legal rights withheld, whether intentional or otherwise; such, for instance, as the circumstance in a suit for the administration of assets against an infant heir, where a sale of real estate has been decreed before a sufficient account has been taken of the personal estate; or, that the infant has not had a day, after his coming of age, to show cause against the decree in loses, where he is entitled to such indulgence : 15 Danl. Ch. Pr., 206. But it is otherwise where everything is fair, and the proceedings in reasonable conformity to law. The decree binds an infant where he cannot impeach or open it: Mills vs. Dennis, 1 Johns., Ch. R., 368.
In this case, the bill seems to be based upon three distinct grounds of equitable jurisdiction: 1st, the Act of Assembly, authorising an administrator in default of personal assets, to resort to the real estate to pay debts; 2d, the Act of 1827, chap. 54, empowering a court of equity, in such cases as are manifestly to the interest of the heirs; and 3d, the general power of a Court of Chancery over trust estate.
The jurisdiction of the Court, in this case, over the subject matter of the litigation, is not questioned, nor, indeed, can it be ; and the principal question for our determination, is, whether the proceedings in the Chancery Court are sufficiently regular and formal to protect bona fide purchasers under it.
No principle is better settled in our law, than when *519 ever a Court of Chancery, or other court of general jurisdiction, possesses jurisdiction of the subject matter of litigation, and has acquired jurisdiction of the parties, as to third parties interested under its judgments and decrees, its proceedings cannot be held to be void after the final disposition of the cause. And, in this respect, it is not material whether the jurisdiction be inherent or statutory, provided the Statute be of a general and public nature: Winchester vs. Winchester, 1 Head, 500; Greenlaw vs. Kinldair, 4 Sneed, 371-9 ; Hooper vs. Fisher, 2 Head, 253; Britton vs. Cowan, 5 Hump., 319 ; Kelcrease vs. Blythe, 6 Hump., 379 ; Jerod vs. Lancaster, 2 Head, 570; Vorhees vs. The Bank of the United States, 10 Peters, 472.
But, admitting the principles of these cases, and the presumption that arises in favor of the proceedings of courts of superior and general jurisdiction, it is insisted, in this case, the Court, when the former decree was. pronounced, had no legal jurisdiction of the person of the complainant.
The ground of this objection is rested on the fact that he is a minor, and, as such, was joined as a complainant, and not made a defendant in the former suit. Is this such an error or irregularity as will render the decree void, and defeat the rights of bona fide purchasers under it ? We think not.
All the lands of the intestate, at his death, were under trust, and liable to be sold at any time, by the Trustees.
The estate was otherwise included, and the original bill appears to have been filed to disencumber *520 it, to pay off the debts, and protect the interest of the infant complainant. The facts of the case seem to have justified, in an eminent degree, the interposition of a Court of Chancery; and although we are free to admit it would have been more in keeping with our -practice to have made the infant a defendant, yet, we do not feel authorized to say that there was such a want of jurisdiction of the person as to render a decree void, as against bona fide purchasers under it.
Lord Langdale, in the case of Starton vs. Bartholomew, 6 Burr., 144, cited in 1 Danl. Chan. Pr., 93 said : “ The Court exercises a very careful discretion, on the one hand, in order to facilitate the proper exercise of the right which is given to all persons to file a bill on behalf of infants, and on the other, to prevent .any abuse of that right; and any wanton expense to the prejudice of infants.” Courts of Chancery are the proper guardians of infants whenever their rights are involved before them; and they are bound to protect their interests, whether they appear by their guardian, as defendants, or their next friend, as complainant.
No decree can safely be obtained against an infant, upon the mere fact of taking the bill pro confesso, or upon an answer in form, by the guardian ad litem. The decree, in such case, must rest upon proof, which, in all cases affecting infants, should be specific and satisfactory, that confers upon the Court jurisdiction to bind them by its decree: Mills vs. Dennis, 8 Johnson’s Ch. R., 368; Davidson vs. Browden, 5 Sneed, 129.
*521 As a defendant, an infant in a suit in equity, may possess advantages which he does not enjoy as a complainant; and under our Statutes and decisions, it is certainly proper, always to give him the advantage of that attitude; and i¡t may he error not to do so: Davidson vs. Bowden, cited above. But, in either case, whether the infant is before the Court as complainant by his next friend, or as defendant by his guardian, it is the duty of the Court to see that the next friend do his duty; and on failure to do so, or for other sufficient cause made out, the Court will remove him: 1 Danl’s Ch. Pr., 205.
In this case, no fraud or collusion is charged upon the next friend or commissioner who conducted the sale; and we do not feel authorized to say the purchasers are to be held answerable, merely because the infant was before the Court as a complainant, and that their title under the decree, is invalid: Lloyd vs. Stone, 9 Vessey, 37-65; also Davidson vs. Bowden, 5 Sneed, 129; Elrod vs. Lancaster, 2 Head, 272.
It is further assigned in argument, as error, that the irregularities in the execution of the decree by the commissioners, are fatally defective. The ground, it is insisted, upon which the decree is predicated, was, that the land was to be ■ sold in a particular order,, which was not observed in the sale. How far the departure by the commissioner from the order of sale prescribed in the decree, under proper exceptions to the confirmation of the report of sale, would effect the validity of the decree in a court of error, on an appeal, or writ of error, we need not now de *522 termine; but in a contest after the final disposition of the cause,’ in which the rights of bona fide purchasers are involved, it certainly cannot, after confirmation, and in the absence of all fraud and combination, be held to render the decree void, and the sales under it, invalid.
The sale was under the decree of the Court, and not by virtue of the trusts, and the purchasers had a right to presume everything to have been legally done. In the case of Lloyd vs. Jones, above cited, Chancellor Kent, in the case of Benning vs. Smith, 3 John. Ch. R., 332, in commenting on it, says: “Lord Eldon seems to have been of opinion, that mere irregularities, without making out a case of fraud or collusion of some sort or other, in the purchase, was not sufficient to effect him.” The same doctrine was recognized by Lord Redsdall, in Burnett vs. Hansell, 12 Sch. and Lef., 568; and it has been repeated by our own Court, in the case of Winchester vs. Winchester, 1 Head, 501, 509.
In this case, there is not the slightest fraud or collusion imputed in the bill, to the purchasers. They appear to have acted in good faith, and without any irregularities in the sale. Nor is there any fraud or collusion charged on the commissioner; and, under the facts of this case, none, we apprehend, could- have been successfully alleged. Although he did not sell the particular lands indicated in the decree directing the sale, he, nevertheless, took the precaution to return a plat of the lands sold, with his report of the sale.
*523 The Court was, thereby, before confirmation, which completed the sale, accurately advised of. the manner in which it had been conducted; and there being no exceptions to the report, it must be presumed that everything was in substantial conformity to the decree. Otherwise, there would be no security to purchasers at judicial sales, and all property sold under the judgment and decrees of the courts, would be at ruinous sacrifices. No prudent man would bid, or risk his money, in such sale, if charged with the burden of investigating with technical accuracy, every item in -a long and intricate Chancery litigation. The law imposes no such necessity upon purchasers, and public policy, as well as the due administration of justice, alike forbid that any such should ever be imposed. See authorities previously cited, especially Winchester vs. Winchester, 1 Head, 501-504; also Whitney vs. the Bank of the United States, 9 Peters, 11.
There is no error in the decree of the Chancellor; and we confirm it.